2012 OK 53

### OKLAHOMA CORRECTIONS PROFESSIONAL ASSOCIATION, INC., a not for profit corporation; David Ramsey, individually; Glen Coleman, Plaintiffs/Appellants,

v.

### Oscar B. JACKSON, Jr., Administrator and Cabinet Secretary for Human Resources and Administration of the State of Oklahoma, individually and in his official capacity, Defendant/Appellee.

No. 110,349.

Supreme Court of Oklahoma.

June 12, 2012.

Michael Salem, Salem Law Offices, Norman, Oklahoma, for Plaintiffs/Appellants.

M. Daniel Weitman, Assistant Attorney General, Margie Weaver, Assistant Attorney General, Oklahoma Attorney General's Office, Oklahoma City, Oklahoma, for Defendant/Appellee.

WATT, J.:

¶ 1 The United States Court of Appeals for the Tenth Circuit certified two questions of Oklahoma law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 § 1601, et seq. We are not asked to determine whether the Legislature's amendment of § 34.70(B)(5) of title 62,[1] which raised the required membership

---

1. Title 62 O.S.2011 § 34.70 providing in pertinent part:

"A.1. Upon the request of a state employee, a state agency shall make voluntary payroll de-

minimum from 1,000 to 2,000 employees for organizations seeking to have dues withheld through a system of voluntary payroll deductions, violates constitutional standards of free speech. Rather, we were requested to address two related first impression questions.[2]

We address a single reformulated first impression question: [3]

"Whether the two thousand (2,000) membership numerosity requirement of 62 O.S. 2011 § 34.70(B)(5), if determined to conflict with constitutional guarantees of free

ductions for the employee to any credit union, bank, or savings association having an office in this state.

... B. Upon the request of a state employee and pursuant to procedures established by the Administrator of the Office of Personnel Management, a state agency shall make payroll deductions for:

1. The payment of any insurance premiums due a private insurance organization with a minimum participation of five hundred (500) state employees for life, accident, and health insurance which is supplemental to that provided for by the state;

2. The payment of any insurance premiums due a private insurance organization or service company which is regulated by the State Insurance Commissioner and with a minimum participation of five hundred (500) state employees for legal services;

3. Premiums or payments for retirement plans with a minimum participation of five hundred (500) state employees for retirement plans which are supplemental to that provided for by the state;

4. Salary adjustment agreements included in a flexible benefits plan as authorized by the State Employees Flexible Benefits Act.

5. Membership dues utilized for benefits, goods or services provided by the Oklahoma Public Employees Association to the organization's membership or any other statewide association limited to state employee membership with a minimum membership of two thousand (2,000) dues-paying members. For purposes of this paragraph, state agencies shall accept online or electronically submitted forms from the Oklahoma Public Employees Association and other state employee associations. The Office of Personnel Management shall develop and implement a verification process for online or electronically submitted forms which may include the use of electronic signature technology or other process as determined appropriate;

6. Contributions to any foundation organized pursuant to 26 U.S.C., Section 501(c)(3) of the Public Employees Association or any other statewide association limited to state employee membership with a minimum membership of two thousand (2,000) dues-paying members;

7. Payments to a college savings account administered under the Oklahoma College Savings Plan Act pursuant to Section 3970.1 et seq. of Title 70 of the Oklahoma Statutes;

8. Subscriptions to the Oklahoma Today magazine published by the State of Oklahoma through the Oklahoma Tourism and Recreation Department; and

9. The payment of any insurance premiums due a private insurance organization, which is regulated by the State Insurance Commission, for an Oklahoma Long–Term Care Partnership Program approved policy pursuant to the Oklahoma Long–Term Care Partnership Act.

... D. Any statewide association granted a payroll deduction prior to January 1, 2008, shall be exempt from the minimum state employee membership requirement.

F. The Oklahoma Employment Security Commission is authorized to deduct from the wages or salary of its employees the employees' contribution to the Oklahoma Employment Security Commission Retirement Plan.

G. Payroll deductions shall be made for premium payments for group insurance for retired members or beneficiaries of any state-supported retirement system upon proper authorization given by the member or beneficiary to the board from which the member or beneficiary is currently receiving retirement benefits.

H. Upon request of instructional personnel employed at either the Oklahoma School for the Blind or the Oklahoma School for the Deaf and pursuant to procedures established by the Administrator of the Office of Personnel Management, the Commission for Rehabilitation Services shall make payroll deductions for membership dues in any statewide educational employee organization or association.

I. Upon the request of a state employee of the Department of Corrections, the Department shall make voluntary payroll deductions for the employee to the Correctional Peace Officer Foundation."

2. As originally certified, the questions provide:

"(1) Is a court authorized by Okla [sic] Stat. Tit. 75, § 11a to sever the numerosity requirement in § 34.70(b)(5) if found to conflict with free speech?

(2) If so, when a provision, as here, has been altered but not added anew, does severance of the altered version restore the old, superseded one?"

3. Questions of law may be reformulated pursuant to 20 O.S.2011 § 1602.1. *Tyler v. Shelter Mutual Ins. Co.*, 2008 OK 9, fn. 1, 184 P.3d 496; *McClure v. ConocoPhillips Co.*, 2006 OK 42, fn. 1, 142 P.3d 390; *Strong v. Laubach*, 2004 OK 21, ¶ 1, 89 P.3d 1066.

speech, may be severed pursuant to 75 O.S.2011 § 11a? [4]"

¶ 2 The question is answered in the affirmative. We hold that, if the federal court determines that the numerosity requirement of 62 O.S.2001 § 34.70(B)(5) conflicts with constitutional guarantees of free speech, the offending statutory provision may be severed pursuant to 75 O.S.2011 § 11a.

¶ 3 In the second question, we were asked to address the issue of whether severance pursuant to 75 O.S.2011 § 11a would revive the prior membership requirement of one thousand (1,000) found in 62 O.S. Supp.2005 § 7.10(B)(5) [5] or eliminate the numerosity language in its entirety. Here, the member-ship number at issue approaches nineteen hundred (1,900).[6] Therefore, **if the federal court determines the statute is unconstitutional,** whether the former membership requirement of one thousand (1,000) is imposed or it is completely eliminated, any pronouncement on the issue would be advisory in nature.[7]

## CERTIFIED FACTS [8] AND PROCEDURAL BACKGROUND

¶ 4 The plaintiff/appellant, Oklahoma Corrections Professionals Association (Corrections Association), is a non-profit organization devoted to lobbying on behalf of state correctional employees. Title 62 O.S.2011

4. Title 75 O.S.2011 § 11a providing:
"In the construction of the statutes of this state, the following rules shall be observed:
1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
b. the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.
2. For acts enacted prior to July 1, 1989, whether or not such acts were enacted with an express provision for severability, it is the intent of the Oklahoma Legislature that the act or any portion of the act or application of the act shall be severable unless:
a. the construction of the provisions or application of the act would be inconsistent with the manifest intent of the Legislature;
b. the court finds the valid provisions of the act are so essentially and inseparably connected with and so dependent upon the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
c. the court finds the remaining valid provisions standing alone are incomplete and are incapable of being executed in accordance with the legislative intent."

5. Title 62 O.S. Supp.2005 § 7.10(B) providing in pertinent part:

"Upon the request of a state employee and pursuant to procedures established by the Administrator of the Office of Personnel Management, a state agency, board, or commission shall make payroll deductions for:
... 5. Membership dues in the Oklahoma Public Employees Association or any other statewide association limited to state employee membership with a minimum membership of one thousand (1,000) dues-paying members...."

6. Plaintiffs–Appellants OCP, Ramsey, and Coleman Supplemental Brief Regarding Certified Questions, providing in pertinent part at p. 17:
"... The minimum membership prior to passage of SB 1866 was only 1,000 and OCP would have qualified with its approximately 1,900 members...."
Admissions in a brief may be regarded as a supplement to the appellate record. *Woods v. Prestwick House, Inc.,* 2011 OK 9, fn. 16, 247 P.3d 1183; *White v. Heng Ly Lim,* 2009 OK 79, fn. 10, 224 P.3d 679; *Tyler v. Shelter Mut. Ins. Co.,* see note 3, supra.

7. This Court does not issue advisory opinions or answer hypothetical questions. *Ball v. Wilshire Ins. Co.,* 2007 OK 80, fn. 3, 184 P.3d 463; *Scott v. Peterson,* 2005 OK 84, ¶ 27, 126 P.3d 1232; *City of Midwest City v. House of Realty, Inc.,* 2004 OK 56, fn. 14, 100 P.3d 678.

8. In answering a certified question, the Court does not presume facts outside those offered by the certification order. *In re Harris,* 2002 OK 35, ¶ 4, 49 P.3d 710; *Jones v. University of Oklahoma,* 1995 OK 138, ¶ 5, 910 P.2d 987. Although we will neither add nor delete such facts, we may consider uncontested facts supported by the record. *McQueen, Rains, & Tresch, LLP v. CITGO Petroleum Corp.,* 2008 OK 66, fn. 4, 195 P.3d 35; *In re Harris,* this note, supra.

§ 34.70(B)(5) [9] allows such organizations with a minimum membership to collect voluntary payroll deductions from those they represent. Prior to 2008, a non-profit organization was required to have one thousand (1,000) dues paying members for the organization to qualify for the automatic payroll withholding. The statute was amended that year to raise the required minimum membership to two thousand (2,000) employees.

¶ 5 In December of 2010, the Corrections Association, having a membership of approximately nineteen hundred (1,900) state employees, filed suit against the defendant/appellee, Oscar B. Jackson, Jr., Administrator and Cabinet Secretary for Human Resources (Jackson/administrator), [10] in federal district court. It sought a preliminary injunction prohibiting the termination of voluntary payroll deductions for members of the Corrections Association scheduled to terminate on January 31, 2011 along with preservation of the "status quo" which it defined as an order requiring reinstatement of dues collection through the voluntary payroll deduction program should payroll deductions be terminated before the district court could act.

¶ 6 The Corrections Association alleged that the 2008 amendment was designed to eliminate, by doubling the membership requirements for voluntary payroll deductions, the organization as a rival to the Oklahoma Public Employees Association (Public Employees Association). The Corrections Association contended that its very existence was dependent on collecting membership dues through the payroll deduction system. It asserted that: 1) the Public Employees Association was unfairly exempted from the numerosity requirement; and 2) the new membership requirement should be invalidated as unconstitutional viewpoint discrimination [11] in violation of the First [12] and Fourteenth [13]

9. Title 62 O.S.2011 § 34.70, see note 1, supra.

10. All references to "Jackson" or "administrator" are intended to encompass the now substituted party, Preston Doerflinger, the current Administrator and Cabinet Secretary for Human Resources and Administration of the State of Oklahoma.

11. "Content discrimination" occurs when the government chooses the subjects that may be publicly discussed. *Giebel v. Sylvester*, this note, infra; *Moss v. United States, Secret Serv.*, this note, infra. "Viewpoint discrimination" is a subset or particular instance of the more general phenomenon of content discrimination, in which the government targets not subject matter but particular views taken by speakers on a subject. *Make the Road by Walking Inc. v. Turner*, 378 F.3d 133 (2nd Cir.2004). It happens when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject. *Giebel v. Sylvester*, 244 F.3d 1182 (9th Cir.2001). It targets not the subject matter, but the views taken by the speaker on the subject. *Children of the Rosary v. City of Phoenix*, 154 F.3d 972 (9th Cir.1998), *cert. denied*, 526 U.S. 1131, 119 S.Ct. 1804, 143 L.Ed.2d 1008 (1999). "Viewpoint neutral restrictions" are those not imposed simply because public officials oppose the speaker's viewpoint. *Knudsen v. Washington State Executive Ethics Bd.*, 156 Wash.App. 852, 235 P.3d 835 (2010). They do not attempt to suppress activity due to disagreement with the speaker's view. *Jackson v. City of Stone Mountain*, 232 F.Supp.2d 1337 (N.D.Ga.2002); *Warner v. City of Boca Raton*, 64 F.Supp.2d 1272 (S.D.Fla.1999), *aff'd*, 420 F.3d 1308 (2005). "Viewpoint neutral" restrictions restrict some expression while permitting other expression, but are "neutral" as to the views it allows to be presented. *Outdoor Media Dimensions, Inc. v. Department of Transportation*, 340 Or. 275, 132 P.3d 5 (2006).

12. The United States Const., Amend. 1, providing:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

13. The United States Const., Amend. 14, providing in pertinent part:

"**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. . . ."

Oklahoma's Due Process Clause, Okla. Const. art. 2, § 7, is coextensive with its federal counterpart, although there may be situations in which the Oklahoma provision affords greater due process protections than its federal counterpart. *State ex rel. Oklahoma Bar Ass'n v. Mothershed*, 2011 OK 84, fn. 65, 264 P.3d 1197; *McClure v. ConocoPhillips Co.*, 2006 OK 42, fn. 54, 142 P.3d 390; *Black v. Ball Janitorial Serv. Inc.*, 1986 OK 75, fn. 9, 730 P.2d 510.

Amendments to the United States Constitution. Further, the Corrections Association argued that the statute was unconstitutional, on its face and as applied, because of its impact on the associational rights of its members.

¶ 7 The federal district court issued an order on April 19th of 2011. It dismissed the Correction Association's federal claims for lack of standing and declined to exercise supplemental jurisdiction over any state law claims. Specifically, the district court held that the Correction Association had not met standing requirements of redressability. Even assuming the statutory provision's unconstitutionality, it reasoned that: 1) striking the offending statutory subsection would not restore the availability of voluntary payroll deductions; and 2) because the Legislature would not have included the provision without the numerosity provision, severing the requirement would amount to "rewriting" the law.

¶ 8 On April 19, 2011, the Corrections Association filed its notice of appeal. The United States Court of Appeals for the Tenth Circuit certified questions to this Court on February 2, 2012 pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2011 § 1601, *et seq.* We set a briefing cycle which was concluded with our order accepting the Corrections Association's filing of its response brief out of time on March 20, 2012.

¶ 9 **IF THE FEDERAL COURT DETERMINES THAT THE NUMEROSITY REQUIREMENT OF 62 O.S.2011 § 34.70(B)(5) CONFLICTS WITH CONSTITUTIONAL GUARANTEES OF FREE SPEECH, THE OFFENDING STATUTORY PHRASE MAY BE SEVERED PURSUANT TO 75 O.S. 2011 § 11a.**

¶ 10 The Corrections Association asserts that the potentially constitutionally infirm language of § 34.70(B)(5) of title 62 is clearly severable whether the numerosity requirement is entirely eliminated or the prior membership status of one thousand (1,000) is revived as a part of parsing the statutory

provision. Jackson argues that the statute is not severable. The administrator contends that the Legislature simply would not have enacted the provision without including the minimum membership requirement of two thousand (2,000) dues-paying, state employees. We disagree with Jackson's contention.

¶ 11 Title 62 O.S.2011 § 34.70 [14] governs voluntary payroll deductions generally and is a part of the Oklahoma State Finance Act, 62 O.S.2011 § 34, *et seq.* Several provisions of the statute allow state employees to request voluntary payroll deductions **without imposing any numerosity requirement;** *e.g.* deductions requested to Oklahoma credit unions, banks, or savings associations; salary adjustment agreements included in an authorized flexible benefits plan; payments to a college savings account administered under the Oklahoma College Savings Plan Act; subscriptions to Oklahoma Today magazine; payment of insurance premiums for long-term care due private insurance organizations regulated by the Insurance Commission; employee contributions to the Oklahoma Employment Security Commission Retirement Plan; retirees' premium payments for group insurance; payroll deductions for employees of the Oklahoma School for the Blind or the Oklahoma School for the Deaf to any statewide educational employee organization or association; Department of Correction employee contributions to the Correctional Peace Officer Foundation; and any statewide association granted a payroll deduction prior to January 1, 2008. Numerosity requirements of five hundred (500) are imposed for: premium payments to private insurance organizations offering supplemental life, accident, and health insurance; insurance premiums for legal services; and supplemental retirement plans.

¶ 12 **Only subsections (B)(5) and (6) impose the two thousand (2,000) membership requirement. The first for voluntary payroll deductions for any statewide dues-paying association other than the Oklahoma Public Employees Association. The second for contributions to any non-profit**

---

**14.** Title 62 O.S.2011 § 34.70, see note 1, supra.

foundation, other than the Oklahoma Public Employees Association, with a minimum membership of two thousand (2,000) dues-paying state employees.

¶ 13 We are in a unique procedural posture. We are not asked to determine whether the statute at issue contains an unconstitutional provision. Rather, the federal court requests that we determine whether, if it finds the numerosity requirement to be unconstitutional, the balance of the statute should stand. In so doing, we begin with a cardinal principle of statutory construction "to save and not destroy." [15] A severability analysis is necessary when some, but not all, provisions of an enactment are condemned as unconstitutional and void. [16] Considerations relevant to severability are outlined in 75 O.S.2011 § 11a. [17] It is a general provision creating a presumption that if one portion of a statutory provision should fail, the balance should retain its validity. [18] The statute requires that we determine whether: a) the purpose of the statute would be significantly altered by severing the offending language; b) the Legislature would have enacted the remainder of the statute without the offending language; and c) the non-offending language is capable of standing alone. [19]

¶ 14 Title 62 O.S. § 34.70 [20] contains no legislative statement that severance is forbidden. It, like all other subsections of the statute, relates to situations where voluntary payroll deductions are allowable. General rules of statutory construction require that we construe provisions *in pari materia* together. [21] Striking the numerosity requirement of subsection 34.70(B)(5) will not affect the clear intent of the whole of the statutory provision—to allow state employees the convenience of utilizing voluntary payroll deductions in certain instances. Furthermore, nothing in the numerosity requirement itself leads this Court to believe that the Legislature would not have enacted the statute without the potentially offending provision. Finally, the surviving provisions can be fully executed without relying on the severed portion for meaning or enforcement.

¶ 15 Should the federal court determine the numerosity requirement of 62 O.S.2011 § 34.70(B)(5) is unconstitutional, we conclude that the portion of the statute sought to be severed, requiring a membership of two thousand (2,000) dues-paying state employees to qualify for voluntary payroll deductions, is not essentially and inseparably connected with and dependent upon the rest of subsection (B)(5) or other provisions of the statute. It can be severed from the rest of the subsection, leaving the balance operational. [22] The altered statute is capable of being executed in accordance with the legislative intent to allow state employees the opportunity to enjoy the convenience of payroll deductions. Therefore, we conclude that the Legislature would have enacted the payroll deduction provision without the membership requirement should the federal court determine it to be unconstitutional. Our view is consistent with the general legislative directive in 75 O.S.2011 § 11A [23] that if any part of a statute is found to be unconstitutional, the remaining provisions shall be valid. [24]

---

15. *Conaghan v. Riverfield Country Day School*, 2007 OK 60, ¶ 23, 163 P.3d 557; *In re Application of the Oklahoma Dept. of Transportation*, 2002 OK 74, ¶ 27, 64 P.3d 546.

16. *Liddell v. Heavner*, 2008 OK 6, ¶ 29, 180 P.3d 1191.

17. Title 75 O.S.2011 § 11a, see note 4, supra.

18. *Wilson v. Fallin*, see note 21, infra; *In re Oklahoma Dept. of Trans.*, 2002 OK 74, ¶ 31, 64 P.3d 546.

19. Title 75 O.S.2011 § 11a, see note 4, supra; *Conaghan v. Riverfield Country Day School*, see note 15, supra.

20. Title 62 O.S.2011 § 34.70(B)(5), see note 1, supra.

21. *Wilson v. Fallin*, 2011 OK 76, fn. 10, 262 P.3d 741; *Cowart v. Piper Aircraft Corp.*, 1983 OK 66, ¶ 4, 665 P.2d 315.

22. *Liddell v. Heavner*, see note 16, supra.

23. Title 75 O.S.2011 § 11A, see note 4, supra.

24. The term "may" is ordinarily construed as permissive while "shall" is commonly considered to be mandatory. *MLC Mort. Corp. v. Sun America Mort. Co.*, 2009 OK 37, fn. 17, 212 P.3d 1199; *Osprey LLC v. Kelly–Moore Paint Co., Inc.*, 1999

## CONCLUSION

¶ 16 Severability of Oklahoma statutory provisions is a matter of state law.[25] In our view, the Oklahoma Legislature would have, in the event the federal court determines the numerosity provision of 62 O.S.2011 § 34.70(B)(5) is unconstitutional, enacted the balance of the statutory provision allowing state employees to opt for voluntary payroll deductions for membership dues. After excision of the subsection's numerosity requirement, the balance of the statute can most certainly stand on its own just as do multiple other subsections requiring no minimum membership or a substantially lower amount of participation.

**CERTIFIED QUESTION ANSWERED.**
ALL JUSTICES CONCUR

OK 50, ¶ 14, 984 P.2d 194; *Shea v. Shea*, 1975 OK 90, ¶ 10, 537 P.2d 417.

25. *Leavitt v. Jane*, 518 U.S. 137, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996); *Local 514 Transport Workers' Union of America v. Keating*, 2003 OK 110, ¶ 13, 83 P.3d 835.